**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF KENTUCKY**
**CENTRAL DIVISION**
**LEXINGTON**

| | | |
|---|---|---|
| **RITA CHERYL DEVINE,**<br><br>**Plaintiff,**<br><br>**v.**<br><br>**FRANK BISIGNANO,**<br>**Commissioner of Social Security,**<br><br>**Defendant.** | ) | **NO. 5:25-CV-00455-MAS** |

**MEMORANDUM OPINION & ORDER**

Rita Cheryl Devine appeals the Commissioner's denial of her application for Disability Insurance Benefits ("DIB") under Title II and Supplemental Security Income ("SSI") under Title XVI of the Social Security Act.[1] The Court addresses the parties' competing briefs and Devine's reply. [DE 8, 12, and 13]. This matter is fully ripe for review. For the reasons discussed below, the Court finds that the Administrative Law Judge applied the correct legal standards and that substantial evidence supports the decision. Accordingly, the Commissioner's final decision is affirmed.

---

[1] "The standard for disability under both the DIB and SSI programs is virtually identical." *Roby v. Comm'r of Soc. Sec.*, No. 12-10615, 2013 WL 451329, at *3 (E.D. Mich. Jan. 14, 2013), *report and recommendation adopted*, 2013 WL 450934 (E.D. Mich. Feb. 6, 2013); *see also Elliott v. Astrue*, No. 6:09-CV-069-KKC, 2010 WL 456783, at *4 (E.D. Ky. Feb. 3, 2010). The Court generally references SSI and DIB case law interchangeably, mindful of the particular regulations pertinent to each type of claim.

# I. FACTUAL AND PROCEDURAL HISTORY

## A. Procedural History

Devine protectively filed DIB and SSI applications on April 14, 2021, alleging disability beginning on January 1, 2021. She later amended the alleged onset of the claim to April 5, 2021, after her date last insured for DIB. [Administrative Transcript[2] ("TR") at 12, 56, 227]. She alleges disability due to depression, anxiety, chronic obstructive pulmonary disease (COPD), degenerative disk joint disease, arthritis, peripheral neuropathy, facet arthritis, osteoarthritis, and because she is "on oxygen." [TR at 248]. Devine's claim was initially denied on November 4, 2021, and denied upon reconsideration on February 2, 2022. [TR at 11]. Administrative Law Judge ("ALJ") Jonathan Stanley conducted a hearing on August 8, 2023. The ALJ ultimately concluded that Devine was not disabled under the Social Security Act. [TR at 11-21]. The Appeals Council then denied Devine's request for review. [TR at 1599]. Devine filed suit in this Court, where the case was remanded to the Agency as stipulated to by the parties. [TR at 1605]. On October 6, 2025, after another hearing, ALJ Stanley issued a new decision on Devine's claims, again finding her not disabled. [TR at 1520-35]. Devine did not seek further review, therefore, the 2025 hearing decision is the final decision for purposes of 42 U.S.C. § 405(g).

## B. Personal Background

Devine was 47 years old at the alleged onset date. [TR at 227]. At the time of the ALJ's 2025 opinion that put her in the "closely approaching advanced age"

[2] The Administrative Transcript is docketed at [DE 5]. The Court shall utilize the pagination generated by the Commissioner when referencing the Transcript.

category. 20 CFR 404.1563 and 416.963. She has a high school diploma. [TR at 1534]. She has no past relevant work. [TR at 1534].

## C. Medical History

A brief summary of the pertinent medical records is as follows:

Devine had an MRI in March 2020 that confirmed moderate foraminal narrowing, a broad-based disc bulge and mild-to-moderate disc space narrowing and osteophytosis. [TR at 544-45]. In April 2021, Devine presented to the emergency room with shortness of breath, back pain and peripheral neuropathies. [TR at 553]. Around the same time imaging revealed severe left renal atrophy. [TR at 595]. In 2021 she began taking vitamin B12 for fatigue and to address a deficiency, though in July 2021 reported that it was not helpful. [TR at 1063].

Devine treated for pain with Commonwealth Pain and Spine on and off from 2019 through 2022. [TR at 362-88, 774-808, and 1083-86]. She prescribed a back brace for pain. [TR at 366]. She previously tried physical therapy and injection therapy without benefit at other pain clinics. [TR 792]. The pain clinic prescribed hydrocodone for pain relief. [TR at 792].

She was seen for syncopal episodes in 2023 that were determined to be related to blood pressure rather than seizures, however, she was treated with medication for these episodes (though improvement was noted as possible placebo effect). [TR at 1493].

## D. Medical Opinions

Devine underwent a physical consultative evaluation with Dr. Stephan Nutter and a psychological evaluation with Leanne Scott, both in 2021 in advance of the

ALJ's first decision. [TR at 756-66 and 767-71]. Dr. Nutter concluded that Plaintiff's "ability to perform work-related activities such as bending, lifting, walking, crawling, squatting, carrying and traveling as well as pushing and pulling heavy objects is impaired[.]" [TR at 758]. Scott noted normal grooming, appearance, and that Devine was cooperative and affect appropriate. [TR at 769]. Devine's attention and concentration appeared adequate, her speech flow was normal, and the organization of her thought processes appeared logical and goal-directed. [TR at 769]. Devine struggled with spelling and basic math. Her abstraction, judgment, and decision making were adequate, but her fund of knowledge appeared to be low average. [TR at 770]. Scott found Devine had a slight to moderate degree of impairment in sustaining attention and concentration towards the completion of tasks under time constraints, a slight degree of impairment in her ability to tolerate stress and the pressure of day-to-day employment, and a slight degree of impairment in responding appropriately to supervisors, co-workers, and the general public. [TR at 771].

In 2025, Devine underwent a second round of consultative evaluations with RN Jamie Baldock completing a physical evaluation and Dr. Shambra Mulder completing a psychological evaluation. RN Baldock concluded that she could carry up to 100 pounds frequently and remain on her feet for eight hours in an eight-hour workday. [TR at 1807-08]. Dr. Mulder found Devine's full-scale IQ was very low, and she had mild depression and mild anxiety. Devine was affected to a moderate degree by mental health symptoms in her capacity to understand, retain and follow instructions towards the performance of simple, repetitive tasks and her ability to

tolerate stress and pressure of day-to-day employment, and affected by a slight degree in her ability to sustain attention and concentration towards the completion of tasks under time constraints, and her capacity to respond appropriately to supervisors, coworkers, and the general public. [TR at 1816].

### E. THE ALJ'S DECISION

After considering the testimony presented during the administrative hearing and reviewing the record, the ALJ concluded that Devine suffers from the severe impairments of degenerative disc disease; osteoarthritis; chronic obstructive pulmonary disease with emphysema; postural lightheadedness; seizure-like symptoms preceded by postural dizziness; and psychogenic nonepileptic spells. (20 CFR 404.1520(c) and 416.920(c)). [TR at 1547]. The ALJ found that the following alleged impairments were nonsevere "as they do not cause more than minimal effects on the claimant's ability to engage in basic activities": syncope, unspecified depressive disorder; anxiety, abdominal pain, diabetes mellitus, status-post hysterectomy, status-post cholecystectomy, history of breast cancer, status-post lumpectomy, hypertension; history of uterine cancer, vitamin deficiency, insomnia, leukosytosis, dyslipidemia, history of adenopathy, diverticulosis, hematuria, chest pain; left renal atrophy with left renal artery stenosis, astigmatism, hyperopia; presbyopia; refractive disorder; conversion disorder; bilateral apical pleural-parenchymal scarring and interval decrease right upper lobe subpleural atelectasis. [TR at 1547].

The ALJ further concluded that Devine does not have any impairments or combination of impairments that meets or medically equals the severity of the listed

impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926). [TR at 1548].

The ALJ then found that Devine had the residual functional capacity ("RFC") to perform

> light work as defined in 20 CFR 404.1567(b) and 416.967(b) except the claimant can occasionally climb stairs and ramps, but cannot climb ropes, ladders and scaffolds; can frequently balance; can occasionally stoop, kneel, crouch and crawl; can frequently reach overhead; can occasionally be exposed to temperature extremes, humidity, vibration and atmospheric conditions such as pulmonary irritants; cannot work in high exposed places or around moving mechanical parts; can understand, remember and carry out simple instructions and procedures; can use judgement to make simple work related decisions; can maintain adequate attention and concentration to perform simple tasks on a sustained basis for two hour intervals with normal supervision; can manage and tolerate occasional changes in a work setting; and can adapt to the pressures of simple work.

[TR at 1527]. Based on her age, education, work experience, RFC, and the VE's testimony, the ALJ concluded that there exist jobs in significant numbers in the national economy that Devine can perform, such as cashier, ticket taker, and mail clerk. [TR at 1534]. Accordingly, the ALJ determined that Devine was not under a disability, as defined in the Social Security Act, from January 1, 2021, through the date of the decision October 6, 2025. [TR at 1535].

## II. LEGAL FRAMEWORK

### A. Standard of Review

Judicial review of the ALJ's decision is deferential and strictly limited. The Court's sole task is to determine whether the ALJ applied the correct legal standards and whether the ALJ's factual findings are supported by substantial evidence in the record. *See Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 405 (6th Cir. 2009); *Jordan*

*v. Comm'r of Soc. Sec.*, 548 F.3d 417, 422 (6th Cir. 2008); *see also* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive[.]"). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994). "The substantial-evidence standard allows considerable latitude to administrative decisionmakers" and "presupposes that there is a zone of choice within which the decisionmakers can go either way, without interference by the courts." *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (quoting *Baker v. Heckler*, 730 F.2d 1147, 1150 (8th Cir. 1984)).

The Court must make its substantial evidence determination based on the record as a whole. *Cutlip*, 25 F.3d at 286. However, the Court need not comb the entire record in search of facts supporting under-developed arguments. [*See* General Order No. 13-7 (citing *Hollon ex rel. Hollon v. Comm'r of Soc. Sec.*, 447 F.3d 477, 491 (6th Cir. 2006)) ("The parties shall provide the Court with specific page citations to the administrative record to support their arguments. The Court will not undertake an open-ended review of the entirety of the administrative record to find support for the parties' arguments.")]. Further, the Court may not "try the case *de novo*, resolve conflicts in evidence, or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007). The Court must affirm the ALJ's decision if there is substantial evidence in the record to support it, even if substantial evidence might also support the opposite conclusion. *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387,

393 (6th Cir. 2004); *Mullen*, 800 F.2d at 545. Likewise, the Court must affirm any ALJ decision supported by substantial evidence, even if the Court itself might have reached a different result. *See Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005); *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389–90 (6th Cir. 1999). In other words, the ALJ's findings are conclusive if they are supported by substantial evidence.

## B. THE SEQUENTIAL EVALUATION PROCESS

A "disability" under the Social Security Act is defined as "the inability to engage in 'substantial gainful activity' because of a medically determinable physical or mental impairment of at least one year's expected duration." *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 539 (6th Cir. 2007) (citing 42 U.S.C. § 423(d)(1)(A)). For context, the Court briefly outlines the ALJ's five-step sequential analysis. 20 C.F.R. § 404.1520(a)(4); 416.920(a)(4). In the first step, the ALJ decides whether the claimant is performing substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i); 416.920(a)(4)(i). In the second step, the ALJ determines whether the claimant suffers from any severe impairments. 20 C.F.R. § 404.1520(a)(4)(ii); 416.920(a)(4)(ii). In the third step, the ALJ decides whether such impairments, either individually or collectively, meet an entry in the Listing of Impairments. 20 C.F.R. § 404.1520(a)(4)(iii); 416.920(a)(4)(iii). In the fourth step, the ALJ determines the claimant's RFC and assesses whether the claimant can perform past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv); 416.920(a)(4)(iv). Finally, in the fifth step, the burden shifts to the Commissioner. The ALJ must consider and decide whether there are jobs that exist in significant numbers in the national economy that the claimant could

perform based on RFC, age, education, and work experience. 20 C.F.R. § 404.1520(a)(4)(v) 416.920(a)(4)(v). If the ALJ determines at any step that the claimant is not disabled, the analysis ends there. 20 C.F.R. § 404.1520(a)(4); 416.920(a)(4).

## III. ANALYSIS

On appeal, Devine raises three claims of error. First, she argues that the ALJ's residual functional capacity determination is not supported by substantial evidence because it does not encompass the total limiting effects of all her impairments. [DE 8, Page ID# 2101]. Second, she contends that the ALJ erred in the evaluation of the opinion evidence by failing to address the supportability of the Scott opinion. [DE 8, Page ID# 2105]. Finally, Devine argues that the ALJ failed to establish the limitations from Dr. Nutter and RN Baldock's opinions into the RFC. [DE 8 at Page ID# 2108]. The Commissioner responds that substantial evidence supported the ALJ's overall finding of not disabled, substantial evidence supported the ALJ's RFC, and the RFC was sufficiently consistent with partially persuasive medical opinion evidence, as the ALJ did not find any opinion "fully" persuasive. [DE 12, Page ID# 2124-25]. The Court addresses each argument in turn.

### A. The RFC Determination was Supported by Substantial Evidence

A claimant's RFC "is the most [she] can still do despite [her] limitations." 20 C.F.R. § [404.1545(a)(1) / 416.945(a)(1)]. It "is an administrative assessment of the extent to which an individual's medically determinable impairment(s), including any related symptoms, such as pain, may cause physical or mental limitations or restrictions that may affect [her] capacity to do work-related physical and mental

activities." SSR 96-8p, 1996 WL 374184, at *2 (July 2, 1996). The ALJ assesses the RFC "based on all of the relevant medical and other evidence." 20 C.F.R. § 404.1545(a)(3); 416.945(a)(3). That assessment "must include a narrative discussion describing how the evidence supports each conclusion." SSR 96-8p, 1996 WL 374184, at *7.

The RFC must account for all medically determinable impairments, mental and physical, including those that are not "severe." 20 C.F.R. § 404.1545(a)(2), (b)–(c); *Kohne v. Kijakazi*, Civil Action No. 2: 23-037-DCR, 2023 U.S. Dist. LEXIS 142376, at *11 (E.D. Ky. Aug. 14, 2023) ("The ALJ is required to consider the effects of both severe and non-severe impairments in determining the RFC and must analyze a claimant's 'mild' restrictions in determining the RFC." (citing *Richardson v. Saul*, 511 F. Supp. 3d 791, 799 (E.D. Ky. 2021))). The Step Two severity assessment is "not intended to supplant an RFC determination." *Id.* (citing *Richardson*, 511 F. Supp. 3d at 799).

Nonetheless, an ALJ "is not required to discuss all the evidence submitted, and an ALJ's failure to cite specific evidence does not indicate that it was not considered." *Simons v. Barnhart*, 114 F. App'x 727, 733 (6th Cir. 2004). The ALJ "must [only] provide an 'accurate and logical bridge' between the evidence and the conclusion that the claimant is not disabled." *Craft v. Astrue*, 539 F.3d 668, 673 (7th Cir. 2008). The decision must make clear that the ALJ at least implicitly resolved conflicts in the evidence. *Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 507–08 (6th Cir. 2006).

Devine argues the ALJ did not sufficiently consider her antalgic gait and kidney atrophy in determining her RFC. She primarily complains that the ALJ's decision only addressed instances of normal gait in the record, when there were also many instances of antalgic gait cited in the record that were not cited by the ALJ. This is true. Treatment records show providers observed normal gait on many occasions [e.g., TR at 844, 1057, 1453, 1469, 1919, and 1943] and antalgic gait on many others [e.g., TR at 784, 1130, 1137, 1146, 1154, 1160, 1167, 1514, 1998, 2014, 2020, 2034, 2046, and 2058]. However, the ALJ was not required to discuss every piece of medical evidence. "An ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party. Nor must an ALJ make 'explicit credibility findings' as to each bit of conflicting testimony, so long as his factual findings as a whole show that he 'implicitly resolve[d] such conflicts.'" *Rottmann v. Comm'r of Soc. Sec.*, 817 F. App'x 192, 195–96 (6th Cir. 2020) (citation omitted). "[A] minimal level of articulation of the ALJ's assessment of the evidence" is all that is required. *Morris v. Sec'y of Health & Hum. Servs.*, No. 86-5875, 1988 WL 34109, at *2 (6th Cir. April 18, 1988).

The ALJ considered treatment records from Commonwealth Pain Associates, the treatment provider that repeatedly noted Devine's antalgic gait. [TR at 1528-34, citing to exhibit C40F, which contains medical reports of antalgic gait, as evidence for the RFC determination; TR at 1998, 2014, 2020, and 2034]. The ALJ's express consideration of the medical records containing reports of antalgic gait, even if not overtly mentioned, is a sufficiently minimal level of articulation of the ALJ's

assessment of the evidence. *See Jarrell v. O'Malley*, 2024 WL 4357556, at *8 (E.D. Ky., Sept. 30, 2024) (affirming Commissioner's final decision even where the ALJ did not mention claimant's antalgic gait in the decision). Neither of the consultative evaluators limited Devine's standing or walking; RN Baldock only vaguely suggested Devine "could have potential issues with . . . long distance walking." [TR at 1804].

Devine also briefly argues that the ALJ erred by "not trac[ing] Plaintiff's markedly atrophied kidney to any type of exertional impairment[.]" [DE 8 at Page ID# 2103]. Devine argues that "[l]oss of kidney function is known to lead to fatigue" and, therefore, Devine's atrophied kidney must be connected to her complaints of fatigue in the record and should have been accounted for in the RFC. [DE 8 at Page ID# 2103]. However, Devine does not point to any actual evidence in the medical records that her atrophied kidney is the cause of her fatigue. She does not explain how any fatigue related-limitations are inconsistent with the RFC as determined by the ALJ, such as citing any medical findings that are consisting with fatigue but inconsistent with the RFC. Thus, the Court finds the RFC is supported by substantial evidence.

## B. SUPPORTABILITY OF SCOTT'S MEDICAL OPINION

The regulations list five factors: supportability, consistency, relationship with the claimant, specialization, and other factors. *Id.* § 404.1520c(c)(1)–(5). Supportability and consistency are the most important factors. *Id.* § 404.1520c(b)(2). The regulations define "supportability" as follows: "The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the

more persuasive the medical opinions or prior administrative medical finding(s) will be." *Id.* § 404.1520c(c)(1). In short, supportability looks inward at the source's own findings and explanation.

The ALJ need not address each opinion from a single source separately. "[W]hen a medical source provides multiple medical opinion(s) or prior administrative medical finding(s), we will articulate how we considered the medical opinions or prior administrative medical findings from that medical source together in a single analysis . . . . We are not required to articulate how we considered each medical opinion or prior administrative medical finding from one medical source individually." *Id.* § 404.1520c(b)(1). Nor must the ALJ use the words "supportability" or "consistency." Such specificity or magical incantation of words is not required. *Cf. Forrest v. Comm'r of Soc. Sec.*, 591 F. App'x 359, 366 (6th Cir. 2014) (unpublished) (upholding an ALJ's step three finding where the ALJ "made sufficient factual findings elsewhere in his decision to support his conclusion at step three").

"[T]he measuring stick for an 'adequate discussion' is whether the ALJ's persuasiveness explanation enables the court to undertake a meaningful review of his finding as to whether the particular medical opinion was supported by substantial evidence." *Terhune v. Kijakazi*, No. 3:21-CV-37-KKC, 2022 WL 2910002, at *3 (E.D. Ky. July 22, 2022). Vague gestures to "objective medical evidence" do not build the required "logical bridge." *Id.* But once the ALJ has built that bridge, the analysis stops. A plaintiff's argument that the ALJ misapplied supportability and consistency is often "a veiled attempt to have [the court] reweigh the evidence." *Nasser v. Comm'r*

*of Soc. Sec.*, No. 22-1293, 2022 WL 17348838, at *2 (6th Cir. Dec. 1, 2022) (citing *Kidd v. Comm'r of Soc. Sec.*, 283 F. App'x 336, 341–43 (6th Cir. 2008)).

The ALJ engaged in a robust discussion of Scott's opinion that went far beyond "vague gestures" to the medical evidence. [TR at 1532]. The ALJ "is not required to discuss every detail presented in the 'voluminous case records' nor does [he] need to explain [his] evaluation of each portion of a medical source's opinion." *Ebeling v. Comm'r of Soc. Sec.*, No. 21-CV-00115, 2022 WL 3006209, at *3 (W.D. Ky. July 28, 2022) (citing 20 C.F.R. § 404.1520c(b)). The ALJ considered Scott's findings that

> the claimant's capacity to understand, retain, and follow instructions towards the performance of simple, repetitive tasks appeared not affected by her mental health symptoms. Her ability to sustain attention and concentration towards the completion of tasks under time constraints "appears affected" by these impairments to a "slight to moderate degree." Her ability to tolerate stress and the pressure of day-to-day employment appears affected by these impairments to a "slight degree." Her capacity to respond appropriately to supervisors, co-workers, and the general public in a work setting appears affected to a "slight degree."

[TR at 1532]. The ALJ further considered Devine's "very low range" cognitive scores. [TR at 1532]. The ALJ determined these findings were "party persuasive to the extent they are consistent with and supported by objective evidence." [TR at 1532]. The ALJ then limited Devine to light work with attention only on simple tasks, and to the pressures of only simple work. The ALJ sufficiently built the logical bridge between the medical evidence and his findings.

## C. <u>Physical Limitations Incorporated into the RFC</u>

Briefly, Devine argues that despite finding that two physical consultative evaluations were "generally persuasive, the ALJ failed to establish the limitations

from those opinions into the RFC." [DE 8 at Page ID# 2106]. Specifically, Devine claims the ALJ did not reconcile Dr. Nutter's opinion that her lifting, walking and carrying are impaired, and RN Baldock's opinion that she may be precluded from repetitively squatting, and "could have potential issues with" bending, moderate to heavy lifting, prolonged standing, prolonged sitting, long distance walking, and moderate intensity activity. [TR at 758 and 1804]. "[A]n ALJ's finding that an opinion is persuasive does not require the ALJ to adopt the opinion in its entirety." *Nasser v. Comm'r of Soc. Sec.*, 598 F.Supp.3d 614, 626 (E.D. Mich., Mar. 17, 2022). The opinions from Dr. Nutter and RN Baldock did not incorporate limitations that were directly inconsistent with the ALJ's RFC. For example, the regulations already limit "light work" to lifting "no more than 20 pounds at a time." 20 C.F.R. § 416.967; § 404.1567. Certainly, RN Baldock's opinion merely suggests she "could have issues with" is not a complete bar to any of the listed activities. Regardless, the ALJ found the opinions "generally persuasive" but not that either was "fully persuasive or worthy of adoption. "[S]o long as the ALJ sufficiently articulates how the § 404.1520c factors of supportability and consistency were considered, it is appropriate for the ALJ to find a medical opinion generally persuasive and to adopt the limitations opined therein either in whole or in part." *Kerns v. Kijakazi*, No. 2:20-cv-265-DCP, 2022 WL 1110079, at *7 (E.D. Tenn., April 13, 2022).

## IV. <u>CONCLUSION</u>

Upon consideration of the parties' respective briefs and independent review of the ALJ's decision and record evidence, the Court finds no merit in Devine's arguments that the ALJ's decision should be reversed. Substantial evidence supports

the Commissioner's decision. For all the reasons discussed, and the Court being sufficiently advised, **IT IS ORDERED** that the final decision of the Commissioner denying Devine's applications for DIB/SSI is **AFFIRMED**. A corresponding Judgment will follow.

Signed this the 13th of November, 2026.

MATTHEW A. STINNETT
UNITED STATES MAGISTRATE JUDGE
EASTERN DISTRICT OF KENTUCKY